Commonwealth *vs*. Kurt G. Brown.

Barnstable. January 9, 1985. — April 2, 1985.

Present: Hennessey, C.J., Wilkins, Liacos, Nolan, & O'Connor, JJ.

*Evidence,* Cross-examination. *Witness*, Bias. *Practice, Criminal,* Sentence.

At the trial of an indictment charging the defendant with burglary while being armed and making an assault in a dwelling, the judge did not err in refusing to allow certain lines of questioning designed to demonstrate the bias of a key prosecution witness, where the testimony sought either would not have been competent to allow the jury to infer such bias, or would have been irrelevant in the form offered. [397-398]

The Appellate Division of the Superior Court was the appropriate forum to consider a criminal defendant's challenge to the severity of his sentence. [398]

INDICTMENT found and returned in the Superior Court Department on June 29, 1983.

The case was tried before *Augustus F. Wagner, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Frederick C. Mycock* for the defendant.

*Francis E. Scheele*, Assistant District Attorney, for the Commonwealth.

O'Connor, J. After a Superior Court jury trial, Kurt G. Brown was convicted on an indictment charging him with "burglary while being armed and making an assault in a dwelling." The judge sentenced Brown to imprisonment for a term of not more than ninety, nor less than sixty, years at the Massachusetts Correctional Institution at Walpole. Brown challenges the judge's refusal to allow at trial certain lines of questioning designed to demonstrate the "bias or prejudice" of David Dorr, the key witness. Brown also contends that, in sentencing Brown, the judge abused his discretion and violated Brown's constitutional rights. We transferred the appeal here on our own motion. We affirm the judgment.

David Dorr was the key prosecution witness at Brown's trial. Dorr testified that on May 20, 1983, he and Brown broke into the home of Antoinette W. Culler, and that Brown hit Culler with a chair. In response to questions from the prosecutor, Dorr testified that the police arrested him for the crime at Culler's home about a week after it had occurred, and that at the time of his arrest he told Detective Sousa the story that he had just told the jury. Dorr also testified that he had pleaded guilty to the crime, and that, in return for Dorr's agreement to testify at Brown's trial, the prosecutor had agreed to recommend that Dorr be sentenced to a ten-year term at the Massachusetts Correctional Institution at Concord.

In his cross-examination of Dorr, defense counsel attempted to establish that Detective Sousa had planted Brown's name in Dorr's mind, but Dorr rejected defense counsel's suggestion.

Detective Sousa testified later in the trial. In his cross-examination of Sousa, in an effort to establish Dorr's anger toward Brown, making him a biased witness, defense counsel tried to establish that, before Dorr told Detective Sousa of Brown's involvement in the Culler crime, another police officer — Detective Rivers — had told Dorr that Brown had implicated Dorr in another crime — the breaking and entering of a pizza parlor. Detective Sousa denied having any knowledge of that.[1] Later in his cross-examination of Detective Sousa, defense counsel returned to that subject. After the judge sustained two objections by the prosecutor, counsel approached the bench. Defense counsel made an offer of proof that Dorr "was taken into the station on another matter. It was the breaking and entering into a pizza place. And he was told by I think Detective Rivers, he didn't know until now, 'that Kurt Brown had ratted him out' . . . . Immediately thereafter, Detective Sousa confronted him." The judge concluded that the matter "should have been brought out through Mr. Dorr, if at all" and asked

---

[1] DEFENSE COUNSEL: "I was asking, correct me if I'm wrong, I was under the impression someone had told David Dorr that Kurt Brown said he committed some crime. I don't think that one, but some other crime that night. Some police officer told him that. Are you aware of that?"

WITNESS: "I am not aware of that. It may have happened."

the prosecutor whether Dorr was still available. He was. Defense counsel objected to the judge's ruling, but he did not ask to question Dorr further. Nor did defense counsel subpoena Detective Rivers.

Brown testified later in the trial. On direct examination, he testified that before Memorial Day of 1983 he had a conversation concerning Dorr with the owner of a pizza parlor located near Brown's home. Defense counsel asked Brown to relate that conversation to the jury. The prosecutor objected. Counsel approached the bench, and defense counsel made the following offer of proof: "There are two things here. He was asked by this fellow if he could find out who broke into New England Pizza II. He found out and told him that it was David Dorr. . . . David Dorr then confronted him sometime before Memorial Day. It is offered to show bias and prejudice of [Dorr]. And after that time they never spoke again . . . ." The judge sustained the objection. "There may be another way," said the judge, "but that's not the one." Brown did not testify about the substance of his conversaton with the pizza parlor owner, and defense counsel did not bring it out in any other way. Brown did testify, however, that, after talking with the owner of the pizza parlor, he and Dorr had a confrontation and, as a result of that confrontation, never spoke to each other again.

Brown argues that he had the right to introduce evidence from which the jury could have inferred Dorr's bias. More specifically, Brown asserts in his brief that he had the right to introduce that evidence "by any competent means, either on cross-examination or by the introduction of extrinsic evidence," even if the introduction of that evidence would reveal an otherwise inadmissible fact. Therefore, Brown concludes, the trial judge committed reversible error by excluding evidence offered by Brown concerning: "(1) [Brown's] conversation with a local pizza store owner relating to 'finding out' who had committed the robbery of the store; (2) [Brown's] statements telling the store owner David Dorr had been involved; and (3) evidence relating to the fact David Dorr knew at the time he implicated [Brown] in the instant action that Kurt Brown had 'ratted on him' " We

agree with Brown's statement of the law, but we disagree with his conclusion.

"A defendant has the *right* to bring to the jury's attention any 'circumstance which may materially affect' the testimony of an adverse witness which might lead the jury to find that the witness is under an 'influence to prevaricate'" (emphasis in original). *Commonwealth* v. *Haywood*, 377 Mass. 755, 760 (1979), quoting from *Commonwealth* v. *Marcellino*, 271 Mass. 325, 327 (1930). That right remains intact even if the evidence offered reveals an otherwise inadmissible fact, such as the witness's commission of a crime. *Commonwealth* v. *Martinez*, 384 Mass. 377, 380-381 (1981). *Commonwealth* v. *Joyce*, 382 Mass. 222, 229 (1981). *Commonwealth* v. *Redmond*, 357 Mass. 333, 338 (1970). Furthermore, a defendant may introduce that evidence through, as Brown well puts it, "any *competent* means" (emphasis added), including "reasonable" cross-examination of the witness, see, e.g., *Commonwealth* v. *Dougan*, 377 Mass. 303, 310 (1979), or extrinsic evidence, see, e.g., *Commonwealth* v. *Gabbidon*, 17 Mass. App. Ct. 525, 530-532 (1984) (conversation between witness and defendant's uncle introduced through the uncle).

On this appeal, Brown complains of no exclusion of *competent* evidence that would have allowed the jury to infer Dorr's bias against Brown. Brown argues that the judge erred by refusing to allow him to cross-examine Detective Sousa about an alleged conversation between Dorr and Detective Rivers. But Detective Sousa testified that he had no knowledge of such a conversation. See note 1, *supra*. A witness cannot testify about a matter about which he knows nothing. Furthermore, the judge did not "exclude[ ] the total inquiry" into the conversation between Dorr and Detective Rivers. *Commonwealth* v. *Ahearn*, 370 Mass. 283, 287 (1976). Instead, the judge suggested that defense counsel could try to bring out the conversation through Dorr. That defense counsel did not act on the judge's suggestion nor subpoena Detective Rivers, another competent source of information about the conversation, does not make the judge's ruling erroneous.

Nor did the judge err when he refused to allow Brown to relate to the jury the substance of his conversation with the owner of the pizza parlor. The jury could have inferred bias from evidence of Dorr's knowledge of that conversation, if such evidence had been introduced, but they could not have drawn such an inference simply from a conversation at which Dorr was not shown to be present. Again, the judge did not exclude the total inquiry. *Commonwealth* v. *Ahearn, supra.* He merely refused to allow Brown to place before the jury evidence that was irrelevant in the form offered. In doing so, the judge committed no error. *Commonwealth* v. *Sansone*, 252 Mass. 71, 74 (1925). Defense counsel's offer of proof indicates that, sometime after Brown's conversation with the pizza parlor owner, Dorr "confronted" Brown. Although that offer suggests that Dorr did have knowledge of Brown's conversation with the pizza parlor owner, a responsive answer to the question propounded would not have disclosed that information. "Evidence offered must be responsive to a competent question, in order that its exclusion be error." *Hallwood Cash Register Co.* v. *Prouty*, 196 Mass. 313, 315 (1907). The record indicates that the judge also refused to allow Brown to relate to the jury the substance of his "confrontation" with Dorr, and that Brown objected to that ruling. But Brown's brief contains no argument about that ruling. Therefore, the point is waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

Brown objects to the severity of his sentence, but we decline to reach that issue. Brown has preserved his right to appeal his sentence to the Appellate Division of the Superior Court. See G. L. c. 278, §§ 28A & 28B; *Walsh* v. *Commonwealth*, 358 Mass. 193, 195-196 (1970). In *Commonwealth* v. *Morrow*, 363 Mass. 601 (1973), we reached the defendant's challenge to the severity of his sentences even though he had not appealed them to the Appellate Division, *id.* at 610-612, but in that case the Commonwealth did not argue the propriety of our addressing the defendant's challenge, as it did here orally. Having considered the issue here, we conclude that an eligible criminal defendant should first address to the Appellate Division a complaint regarding the severity of his sentence.

*Judgment affirmed.*