COMMONWEALTH *vs.* ROBERT AGUIAR.

Nantucket. May 4, 1987. — July 20, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal,* Verdict, Capital case. *Evidence,* Cross-examination, Bias. *Witness,* Bias.

Statement of procedure in a capital case with respect to a defendant's motion pursuant to the second sentence of Mass. R. Crim. P. 25 (b) (2), seeking reduction in the verdict from murder in the first degree to manslaughter. [510-511]

The court expressed the view that the judge in a capital case had authority after conviction but before entry of the appeal in the Supreme Judicial Court to act on the defendant's motion to set aside the verdict pursuant to the second sentence of Mass. R. Crim. P. 25 (b) (2). [511-512]

A defendant convicted of first degree murder was entitled to a new trial where he was denied his right of confrontation secured by the Sixth Amendment to the United States Constitution, by reason of the trial judge's foreclosing cross-examination of the Commonwealth's principal eyewitness, as well as introduction of extrinsic evidence, on the issue of that witness's bias or prejudice in relation to the defendant. [512-515]

INDICTMENT found and returned in the Superior Court Department on September 12, 1982.

The case was tried before *John D. Sheehan, J.,* and posttrial motions were heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard Abbott* for the defendant.

*Michael D. O'Keefe,* Assistant District Attorney (*Philip A. Rollins,* District Attorney, with him) for the Commonwealth.

LYNCH, J. After a jury trial in the Superior Court, the defendant, Robert Aguiar, was found guilty of murder in the first

degree, and of unlawfully carrying a firearm.[1] The defendant's motion for required findings of not guilty, filed at the close of the Commonwealth's case and renewed at the close of all the evidence, was denied. On June 11, 1984, the defendant filed a timely notice of appeal and a motion for a new trial. On March 18, 1985, the defendant filed a motion to set aside the verdict pursuant to Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), seeking a reduction in the verdict from murder in the first degree to manslaughter. On May 31, 1985, the trial judge denied the defendant's motion for a new trial, set aside the verdict of guilty of murder in the first degree and entered a verdict of guilty of voluntary manslaughter. The Commonwealth appeals from the allowance of the defendant's motion to set aside the verdict. The case was entered in the Appeals Court on April 9, 1986. We took the case on our own motion.

The Commonwealth claims that the judge lacked authority to reduce the verdict to manslaughter under rule 25 (b) (2), and, in the alternative, that the judge abused his discretion in allowing the motion. The defendant claims the jury's verdict was correctly set aside but that the judge committed reversible error during trial in the following: (1) by denying the defendant his Sixth Amendment right to cross-examine the chief prosecution witness on the issue of motive, bias, and intent; (2) by failing to cure, in his charge to the jury, error in the prosecutor's closing argument; and (3) by refusing to allow the defendant to impeach an unavailable witness, i.e., the victim. The defendant also claims that he was denied due process of law because he was not tried by an impartial jury. Finally, he claims that the judge erred in denying his motion for a new trial based on juror impropriety.

In his memorandum and order on the defendant's motion to set aside the verdict, the judge found the following facts. Both the defendant and the victim, David King, were residents of

---

[1] Although a notice of appeal was filed in the unlawful possession of a firearm conviction, the issue was neither briefed nor argued. We consider that appeal waived.

the island of Nantucket. The events leading up to the shooting began with an incident at a local bar where the defendant assisted two male employees in forcefully removing King from the premises when he refused to leave. That night, King accosted the defendant and during the following week he pursued the defendant around the island, confronted the defendant on several occasions and challenged him to fight, and threatened the defendant.

King was described as a powerfully-built man who had a violence-prone personality and was reputed for his temper and his fighting ability. The defendant was fearful of King, avoided him and refused to accept King's challenges. The defendant made numerous attempts to secure the assistance of the police and sought relief at the Nantucket District Court, all to no avail. The defendant armed himself with a handgun for protection but continued to avoid King.

On the day of the shooting, the defendant was driving along a road to go fishing; King was driving in the opposite direction, with Edward Kniskern as a passenger. He saw the defendant's truck, turned his vehicle around and pursued the defendant to the edge of a pier. King pulled his truck in behind the defendant, jumped out of his vehicle, approached the defendant and challenged the defendant to get out of his truck and fight. The defendant feared for his personal safety. His only means of escape was into the ocean; he chose to stand and defend himself. He fired a warning shot; then shot King once, inflicting a fatal wound.

1. *Motion for reduction of verdict.* The Commonwealth claims that the trial judge had no authority to rule on the defendant's motion for reduction of verdict because it was filed nine months after the defendant filed a claim of appeal from the conviction of murder in the first degree. Although the view we take of this case does not require us to answer this claim, we do so nevertheless in order to settle the proper procedure for deciding such motions in the future.

On June 11, 1984, the defendant filed both a timely appeal from the conviction of murder in the first degree, and a motion for a new trial. Until the appeal is entered in this court, the

Superior Court retains jurisdiction.[2] Often in a capital case, when a motion for a new trial is filed in the Superior Court, the clerk will not transfer the case for entry in this court until the Superior Court judge has acted on the motion for new trial. This is consistent with judicial economy since, if a new trial is granted, there may be no need for review by this court.

In the present case, before the trial judge had acted on the motion for new trial, the defendant filed a motion to set aside the verdict under Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), which states in part: "If a verdict of guilty is returned, the judge may on motion set aside the verdict and order a new trial, or order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint." This rule contains no limitation barring its application to first degree murder convictions, nor is there a time limit within which a defendant must file such a motion.[3] See *Commonwealth* v. *Keough*, 385 Mass. 314, 318 (1982). When the defendant in the present case filed his motion to set aside the verdict, the Superior Court still had jurisdiction of the case. The motion for new trial was not denied until May 31, 1985, the same day that the judge allowed the defendant's motion to set aside the

---

[2] General Laws c. 278, § 33E (1984 ed.), states in part: "In a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. . . . After the entry of the appeal in a capital case and until the filing of the rescript by the supreme judicial court motions for a new trial shall be presented to that court and shall be dealt with by the full court, which may itself hear and determine such motions or remit the same to the trial judge for hearing and determination."

[3] The first sentence of rule 25 (b) (2) imposes a time limit of five days from the discharge of the jury within which to *renew* a motion for a required finding of not guilty where the motion had been denied during trial and the case submitted to the jury. This court has read the second sentence of rule 25 (b) (2) as "quite apart" from the first sentence and has held that there is no such time limit in the second sentence of the rule, which deals with motions to set aside the verdict. *Commonwealth* v. *Keough, supra* at 317-318. The court saw an analogy in Mass. R. Crim. P. 30 (b), which governs motions for new trial and allows for such "at any time if it appears that justice may not have been done."

verdict. Thus, the judge was within his authority to act on the motion to set aside the verdict. We need not decide, however, whether the judge abused his discretion in allowing the motion since the defendant presses his claim of reversible error in the conduct of the trial and since we conclude that a new trial is required.

2. *Restriction of cross-examination.* The defendant claims that he was denied his Sixth Amendment right of confrontation and cross-examination, as the judge would not allow the defendant to introduce certain evidence of bias on the part of Edward Kniskern the "star witness" for the Commonwealth. In a lobby conference prior to trial, the defendant proposed to introduce evidence that Kniskern and the victim, King, were drug dealers on the island, and that the defendant had told Kniskern that if they did not stop dealing drugs, the defendant would turn them in to the police. The defendant claimed that this was the true reason that King and Kniskern wanted to "get" the defendant. The judge stated that he could not see how this had anything to do with the case, and would not allow the defendant to attack Kniskern's credibility in this way because there had been no conviction and because it implicated the witness in criminal activity. Later in the trial, the judge would not allow defense counsel to ask a witness, Bradford Brooks, if he had overheard a conversation between the defendant and Kniskern in which the defendant told Kniskern that if he did not stop selling drugs, the defendant would turn him in to the police.[4]

---

[4] The Commonwealth incorrectly implies that the judge would not allow Brooks to testify about the conversation because defense counsel had failed to produce for the prosecution a statement of Brooks that the defense attorney had taken. During the side bar conference in which Brooks' testimony was discussed, the prosecutor stated that he had not seen the statement and asked that Brooks not be allowed to testify until the prosecutor had an opportunity to talk to the witness. The judge allowed the prosecutor to reserve cross-examination until the next day. With regard to the testimony concerning the conversation between the defendant and Kniskern, the judge said, "No. I told you *before*, I am not letting that in. . . . . I will not let you have anything about the fact that sometime before . . . Aguiar had said to him if he didn't stop selling drugs to kids he would turn him in to the cops" (emphasis added).

Reasonable cross-examination in order to reveal bias or prejudice of the witness is a matter of right. *Commonwealth* v. *Martinez*, 384 Mass. 377, 380 (1981). *Commonwealth* v. *Haywood*, 377 Mass. 755, 760 (1979). *Commonwealth* v. *Redmond*, 357 Mass. 333, 338 (1970). "A defendant has the *right* to bring to a jury's attention any 'circumstance which may materially affect' the testimony of an adverse witness which might lead the jury to find that the witness is under an 'influence to prevaricate'" (emphasis in original). *Commonwealth* v. *Haywood, supra* at 760, quoting *Commonwealth* v. *Marcellino*, 271 Mass. 325, 327 (1930). *Day* v. *Stickney*, 14 Allen 255, 258 (1867). See *Commonwealth* v. *Brown*, 394 Mass. 394, 397 (1985). It matters not that the evidence would reveal an otherwise inadmissible fact, such as the witness's commission of a crime. *Id*. See *Commonwealth* v. *Redmond, supra* at 338.

In *Commonwealth* v. *Redmond, supra*, this court stated: "The Commonwealth had the right to have the entire relationship between [the witness and the defendant] brought to the attention of the jury." *Id*. at 338. Surely that right applies with equal, if not greater, force to a defendant. A judge may not restrict cross-examination of a material witness by foreclosing inquiry into a subject that could show bias or prejudice on the part of the witness. *Commonwealth* v. *Martinez, supra* at 380-381.[5] While a trial judge has discretion in this matter, he or she has no discretion to prohibit all inquiry into the subject. *Id*. at 380. Finally, this evidence may be introduced by reasonable

---

[5] This court has found reversible error, requiring a new trial, where the judge restricted inquiry into the following: pending criminal appeals of the witness, *Commonwealth* v. *Martinez, supra* at 380-381; rape complainant/witness's prior charges of prostitution when found in a situation similar to that in the pending case, *Commonwealth* v. *Joyce*, 382 Mass. 222, 229 (1981); and evidence that the witness's conduct made him a likely suspect and, in fact, he believed he was, *Commonwealth* v. *Graziano*, 368 Mass. 325, 330 (1975). Similarly, the Appeals Court has found reversible error where the judge excluded testimony that the witness had discovered that the defendant's son was having an affair with the witness's wife, *Commonwealth* v. *Piedra*, 20 Mass. App. Ct. 155, 156-158 (1985), and, where the judge excluded evidence of a conversation between two witnesses which indicated that one of the witnesses had a motive to lie, *Commonwealth* v. *Gabbidon*, 17 Mass. App. Ct. 525, 532 (1984).

cross-examination as well as extrinsic evidence. *Commonwealth* v. *Brown, supra* at 397.

In the present case, Kniskern was a material witness for the prosecution. Regardless of how he may have been characterized, he was the only eyewitness to the events on the day of the shooting from the time that King spotted the defendant driving to the pier up to the time of the shooting itself.[6] Defense counsel made it clear that he was seeking to introduce the evidence, not to show the bad character of the witness, but to show what the defense believed to be the true motive for King and Kniskern's wanting "to get" the defendant. In fact, the judge indicated that he was aware that the issue was credibility of the witness.[7] Defense counsel sought to introduce the evidence through both cross-examination of Kniskern, himself, and through the testimony of a witness who overheard the conversation between the defendant and the witness.[8]

The relationship between the defendant and the witness and the victim is clearly relevant to impeach the credibility of the witness. The evidence that the defendant sought to introduce could show a bias or prejudice on the part of the witness in relation to the defendant. The defendant had a right to have the whole relationship presented to the jury. "When a possibility of bias exists, . . . even if remote, the evidence is for the jury to hear and evaluate." *Commonwealth* v. *Henson,* 394 Mass.

---

[6] There were three fishermen who were eyewitnesses to some of the events at the pier.

[7] The judge stated: "You have no record and no conviction and you can't attack his credibility on that alone."

[8] The judge did allow a police officer, Lieutenant Day, to testify that, on the day of the shooting, the defendant had told him that he should see Kniskern and talk to him about selling drugs to children. This does not suffice, however. The relevant inquiry is the relationship between the defendant and Kniskern. The fact that the defendant may have made the above statement to a police officer does not show that Kniskern had any knowledge of this. Furthermore, it has no bearing on the relationship prior to the shooting. With regard to the defendant's testimony, the judge would allow him to testify to the conversation with Lieutenant Day, but specifically stated that he would not allow testimony regarding any conversation between the defendant and Kniskern if it occurred two or three weeks prior to the shooting.

584, 587 (1985). The judge should not have foreclosed all inquiry into this subject area, and the defendant is entitled to a new trial.

Since we reverse the defendant's conviction and remand for a new trial, we need not address the other issues raised on appeal which are not likely to arise again on retrial.[9]

*Judgment reversed.*

*Verdict set aside.*

---

[9] As the logic of his challenge required, the defendant conceded at oral argument that the new trial is not limited to the charge of manslaughter. Since the evidence that the defendant claims would impeach King is the same evidence we have ruled admissible to impeach Kniskern, we have not discussed separately that issue in relation to King.