NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12255


COMMONWEALTH  vs.  RICHARD JONES.



Essex.      May 4, 2017. - October 4, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd, &
Cypher, JJ.[1]


Child Abuse.  Rape.  Indecent Assault and Battery.  Evidence,
    Medical record, Production on demand, Privileged record,
    Cross-examination, Prior misconduct.




Indictments found and returned in the Superior Court
Department on March 27, 2009.

Motions for summonses for the production of records were
heard by Timothy Q. Feeley, J., and the cases were tried before
him.

The Supreme Judicial Court granted an application for
direct appellate review.


Nancy A. Dolberg, Committee for Public Counsel Services,
for the defendant.
David F. O'Sullivan, Assistant District Attorney (Kimberly
Faitella, Assistant District Attorney, also present) for the
Commonwealth.
Meagen K. Monahan, Anthony D. Mirenda, Madeleine K.
Rodriguez, Jeremy W. Meisinger, Stacy A. Malone, & Lindy L.

_____

[1] Justice Hines participated in the deliberation on this
case prior to her retirement.

<u>Aldrich</u>, for Victim Rights Center & others, amici curiae, submitted a brief.

LOWY, J.  The defendant appeals from his convictions stemming from his sexual abuse of his two daughters.  He argues that (1) a Superior Court judge abused his discretion by refusing to issue summonses pursuant to Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979), regarding the release of the  mental health and counselling records of the younger of the daughters, Diane;[2] and (2) the judge's restriction of the defendant's cross-examination of Diane was an abuse of discretion.  We affirm the convictions.[3]

<u>Background</u>.  In 2005 or 2006, when Diane was in the seventh grade and eleven or twelve years old, she stayed home from school one day.  She was sitting on a couch watching television and her father was at a nearby computer when a commercial with sexual themes came on the air.  After a discussion regarding sex sparked by the commercial, the defendant sat down next to Diane and she wound up in his lap.  The defendant then slid his hand under Diane's pants and underwear and touched her vagina.  Diane pushed her father's hand away and ran upstairs to her room.

---

[2]  A pseudonym.

[3] We acknowledge the amicus brief of the Victim Rights Law Center; Jane Doe, Inc.; and the Boston Area Rape Crisis Center.

In the fall of 2008, when Diane was a fourteen year old freshman in high school, she started acting out in school. Due to her behavior she was referred to a psychiatrist and also met with a therapist at a counselling center. At around the same time, Diane first disclosed to a friend at school that her father sexually abused her two years earlier. A high school counsellor heard about the incident and spoke with Diane in the counsellor's office. Diane told the counsellor that "it was all just a dream." The counsellor called Diane's mother and on the way home from school that day Diane told her mother "it was a dream." Diane testified that she was not ready to tell anybody else about the incident at that time because it was around Christmas and she did not want to break up her family.

In February, 2009, Diane told her older sister, Beth,[4] about the sexual abuse, and said she was going to tell the counsellor what happened to her. Beth then told Diane that the defendant had been sexually abusive to her when she was younger. Beth told Diane that she would take care of it and "would do something to put a stop to" the defendant's abuse. Several days later, Beth took some money from her grandmother's purse. The grandmother told the defendant, who became angry and yelled at Beth. Beth then left the house with her friend and went to the

---

[4] A pseudonym.

police and reported the sexual abuse.  The Department of Children and Families (DCF)[5] then became involved.

The defendant was convicted of five of the six charges he faced stemming from the abuse.[6]  We granted his application for direct appellate review.

*Discussion*.  1.  <u>Rule 17 (a) (2) motion</u>.  The defendant argues that the trial judge abused his discretion by denying his motions requesting rule 17 (a) (2)[7] summonses for (a) records

_____

[5] The events in this case straddle the name change of the Department of Social Services to the Department of Children and Families (DCF).  St. 2008, c. 176.  We refer to the agency as DCF.

[6] The defendant was found guilty on indictments charging three counts of rape of a child with force, G. L. c. 265, § 22A; and two counts of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B.  All of the convictions relate to conduct involving the defendant and Beth, except one of the indecent assault and battery convictions, which involved Diane.  The judge ordered a required finding of not guilty on one charge of indecent assault and battery on a child under the age of fourteen as to Beth.

[7] Rule 17 (a) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 885 (1979), provides:

"A summons may also command the person to whom it is directed to produce the books, papers, documents, or other objects designated therein.  The court on motion may quash or modify the summons if compliance would be unreasonable or oppressive or if the summons is being used to subvert the provisions of Rule 14.  The court may direct that books, papers, documents, or objects designated in the summons be produced before the court within a reasonable time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, objects, or portions

from the psychiatrist and the counselling center and (b) counselling records from the middle school where Diane was a student.[8]

Where "a defendant seeks pretrial inspection of statutorily privileged records of any third party," he must satisfy the protocol established in Commonwealth v. Dwyer, 448 Mass. 122, 145-146 (2006). Commonwealth v. Sealy, 467 Mass. 617, 627 (2014) The "protocol is designed to give the fullest possible effect to legislatively enacted privileges consistent with a defendant's right to a fair trial that is not irreparably prejudiced by a court-imposed requirement all but impossible to satisfy." Dwyer, supra at 144. To trigger the protocol, "a defendant must first comply with the threshold requirements of [rule] 17 (a) (2), as elucidated in [Commonwealth v. Lampron, 441 Mass. 265, 269 (2004)]." Sealy, supra. Under the protocol:

> "[T]he party moving to subpoena documents to be produced before trial must establish good cause, satisfied by a showing '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition"'" (emphasis added).

---

thereof to be inspected and copied by the parties and their attorneys if authorized by law."

[8] The Commonwealth agreed to the production of the records of the high school counsellor and DCF.

Dwyer, supra at 140-141, quoting Lampron, supra.

To satisfy the first requirement of Lampron (i.e., that the documents sought are "evidentiary and relevant"), the defendant must make a factual showing "that the documentary evidence sought has a 'rational tendency to prove [or disprove] an issue in the case.'" Lampron, 441 Mass. at 269-270, quoting Commonwealth v. Fayerweather, 406 Mass. 78, 83 (1989). "Potential relevance and conclusory statements regarding relevance are insufficient" to satisfy the rule. Lampron, supra at 269. "Relevance is merely one factor in the analysis, and it is not established by rank speculation." Commonwealth v. Alcantara, 471 Mass. 550, 564 (2015). The requested documentary evidence must also be "likely to be admissible at hearing or at trial." Lampron, supra.

The fourth requirement of Lampron[9] acts as "a reminder that rule 17 (a) (2) is not a discovery tool" (emphasis in original). Dwyer, 448 Mass. at 142, citing Lampron, 441 Mass. at 269. Rather, it is intended to "expedite trial proceedings and to avoid delays caused when counsel must inspect or examine documents or objects produced in response to a summons." Commonwealth v. Mitchell, 444 Mass. 786, 796-797 (2005).

---

[9] The second and third requirements of Commonwealth v. Lampron, 441 Mass. 265, 269 (2004), are neither disputed nor relevant to this appeal.

We review a judge's ruling on rule 17 (a) (2) motions for abuse of discretion. Mitchell, 444 Mass. at 791. "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (citations omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Here, there was no abuse of discretion.

a. Psychiatrist and counselling center records. In his motions, the defendant argued that there were two grounds that made the records of the psychiatrist and from the counselling center relevant. The defendant did not advance an argument as to why the records were likely to be admissible at a hearing or trial.

i. The defendant's first argument was based on the fact that Diane had received treatment from both the psychiatrist and the counselling center, in part because of behavioral issues at school, and that, after having told her friend about the abuse, she had denied to her mother and to the counsellor that abuse had occurred. These records would be relevant to Diane's credibility, the defendant argued, regardless of whether Diane disclosed the abuse during them or not.

The judge disagreed and ruled that, because at the time Diane was referred to the psychiatrist and the counselling

center she had not yet disclosed the abuse to anyone, the requested records would not contain any statements regarding abuse because both the psychiatrist and the counselling center were mandatory reporters under G. L. c. 119, § 51A, and neither had reported abuse.  He also ruled that the defendant's assertion that the lack of disclosure in the records was relevant was too speculative where a girl of Diane's age was referred to a psychiatrist and a counselling center for school behavior issues.

In Commonwealth v. Bourgeois, 68 Mass. App. Ct. 433 (2007), the Appeals Court held that mental health records are not relevant simply because they exist and a victim is referred to mental health services at around the time she first revealed the abuse.  Id. at 437.[10]  In Commonwealth v. Olivier, 89 Mass. App. Ct. 836, 845 (2016), the Appeals Court held that a defendant's argument that the records of the victim's appointment with her therapist after the alleged rape might contain "an inconsistent account or meaningful silence" was too speculative where there was "no evidence the victim ever even spoke to her counsellor about the alleged rape."  Id. at 845-846.  This was so even

---

[10] The Appeals Court drew this conclusion under the earlier, more stringent standard set forth in Commonwealth v. Fuller, 423 Mass. 216, 226 (1996).  Commonwealth v. Bourgeois, 68 Mass. App. Ct. 433, 437 (2007).  The court explained in a footnote, however, that even under Commonwealth v. Dwyer, 448 Mass. 122 (2006), the defendant had not made the required showing.  Bourgeois, supra at 437 n.10.

though the victim had been encouraged by her doctor to speak to the counsellor about the incident. Id. Contrast Commonwealth v. Labroad, 466 Mass. 1037, 1039 (2014) (access to complainant's records allowed because defendant "alleged, with particularity, that [they] contained specific information regarding her complaint of sexual assault").

Here, the defendant provided no factual basis to demonstrate that the materials sought were relevant or would likely be admissible at trial. Although the fact that the psychiatrist and the counselling center did not file mandated reports under G. L. c. 119, § 51A, is not dispositive of the issue, it is a strong indicator that the records sought were not relevant.[11] Without some basis demonstrating the relevance of the records beyond their mere existence, the defendant's motions and affidavits submitted by his counsel lacked sufficient specificity, and were thus too speculative under Lampron. See Sealy, 467 Mass. at 628 (defendant failed to establish relevance of requested records where "all of the allegations contained [in the affidavit supporting the request] were couched in hypothetical language").

---

[11] The defendant's argument that the counsellor's failure to report the abuse after first speaking with Diane shows that mandatory reporters may not always report abuse is unavailing. Diane never told the counsellor that she was abused. Rather, she denied it when the counsellor confronted her.

Further, were we to accept the defendant's argument that the records would be relevant both because they might contain information regarding the alleged assault and because they might not, certain statutory and common-law privileges would be rendered meaningless.[12] See Olivier, 89 Mass. App. Ct. at 845-846; Bourgeois, 68 Mass. App. Ct. at 437.

ii. The defendant's second argument that the psychiatrist and the counselling center records were relevant was based on the fact that the DCF records that had been provided to the defendant, see note 8, supra, contained statements that indicated that Diane's allegations may be the result of repressed memories. Specifically, counsel's affidavit averred that the DCF report stated Diane "only recalls one incident but is unsure if anything else happened that she can't remember" and that Diane "had a 'flashback' that was triggered by a class mate [sic] grabbing her leg." The judge concluded that the defendant's argument that the allegations "may stem" from repressed memory was too speculative to satisfy the Lampron standard.

The defendant's argument that Diane's allegations may have been the result of repressed memory was too speculative. The

---

[12] We further note that the acceptance of such an argument would destroy the rape crisis center counsellor privilege, G. L. c. 233, § 20J, because presumably any records of confidential discussion with a rape crisis counsellor would contain information relevant to sexual assault allegations.

DCF records do not indicate that Diane ever forgot the alleged abuse. Further, the connection between a teenager's description of coming to terms with abuse (e.g., a "flashback") and repressed memory is not clear given that repressed memories can be a symptom of dissociative amnesia, which is a specific medical diagnosis. See Commonwealth v. Shanley, 455 Mass. 752, 757 (2010) (discussing dissociative amnesia as defined in Diagnostic and Statistical Manual of mental disorders).[13]

b. Middle school records. The defendant also sought Diane's records from her middle school, including the records of the guidance counsellor there. This motion was accompanied by an affidavit stating that Diane had attended this middle school and had received a letter of recommendation from a guidance counsellor there that reflected that she "helps her father work[] on cars, [and] she shares an interest in cars with her father."

The judge denied this motion. He reasoned that the requested documents predated Diane's initial disclosure of the alleged abuse; thus, although a lack of disclosure in the

_____

[13] On the day of trial, the defendant renewed his motion for the release of the records of the psychiatrist and the counselling center because the Commonwealth was planning to call an abuse expert as a witness. The defendant argued that this would "open[] the door" to Diane's mental health history, and so he should have access to her records. The judge denied the motion for the same reason he rejected the defendant's first argument regarding these records. There was no abuse of discretion.

records "may well be relevant impeachment inquiry,"[14] it did not make them "evidentiary and relevant."

The motion regarding the middle school records was entirely speculative, and the defendant failed to provide a factual basis as to why the records may be relevant. See Sealy, 467 Mass. at 628. That a middle school student made neutral (or mildly positive) statements regarding her father for the purpose of a recommendation letter for entrance into a high school is unsurprising, even where the child alleges abuse by her parent. The defendant's request to receive these records was a prohibited fishing expedition. See Lampron, 441 Mass. at 269.[15]

2. Limitation on cross-examination. Prior to trial, the Commonwealth filed a motion in limine to limit the defense from referencing "bad character" or "bad acts" of Diane. Defense counsel opposed the motion and argued that the evidence the Commonwealth wanted to preclude went both to Diane's bias or motive to fabricate and to her ability to provide a reliable story, and therefore should be admissible. The judge precluded inquiry into alleged specific instances of "bad acts" because they went to character and were not tied to a motive to

_____

[14] Indeed, Diane was cross-examined on her delayed disclosure and recantations at trial.

[15] We decline the invitation of the defendant to alter the Dwyer protocol.

fabricate.[16]  The judge also ruled that the defense's inquiry into Diane's mental and emotional health was not relevant to "either a motive to fabricate or some sort of inability to recall properly."  Rather, the judge ruled that the proposed inquiry constituted impermissible character evidence.

On appeal, the defendant argues that this ruling by the judge was an abuse of discretion and violated his right to confront witnesses against him under the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.

A defendant has a well-established constitutional right "to cross-examine a prosecution witness to show the witness's bias, and hence to challenge the witness's credibility."  Commonwealth v. Tam Bui, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995).  "A judge may not restrict cross-examination of a material witness by foreclosing inquiry into a subject that could show bias or prejudice on the part of the witness." Commonwealth v. Aguiar, 400 Mass. 508, 513 (1987).

In order to pursue a subject in an attempt to demonstrate bias, a defendant "must make a plausible showing that the

---

[16] Massachusetts does not have a rule of evidence similar to Fed. R. Evid. 608(b), which "permits the scope of permissible cross-examination to include evidence and inquiry relating to the facts of specific instances of prior misconduct on the part of a witness, for the purpose of attacking or supporting the witness's character for truthfulness."  Commonwealth v. Almonte, 465 Mass. 224, 241 (2013).

circumstances existed on which the alleged bias is based." Tam Bui, 419 Mass. at 401. "Determining whether the evidence demonstrates bias, however, falls within the discretion of the trial judge." Commonwealth v. LaVelle, 414 Mass. 146, 153 (1993). In addition, "[a] witness may 'be impeached by evidence challenging his testimonial facilities (e.g., ability to perceive the events or remember them accurately).'" Alcantara, 471 Mass. at 564, quoting Commonwealth v. Daley, 439 Mass. 558, 564 (2003). The scope of such impeachment is also a matter of the judge's discretion. Alcantara, supra at 564-565.

Here, the defendant's argument that Diane was biased was too tenuous because it depended on a showing that Diane so wanted to escape discipline by her father that she concocted a false story of abuse to have him removed from the family home. The defendant hoped to show bias by questioning Diane about, among other things, an allegation that she had stabbed another student at school; a dirt-covered doll that had no legs that she owned; and her desire to "do séances" and use a Ouija board. The defendant offered nothing that tied this evidence of conduct -- and the inquiry into Diane's mental and emotional health -- to Diane's motive to lie, bias, or inability to perceive reality. See Alcantara, 471 Mass. at 564-565 (no error to exclude evidence where no nexus between mental health issues and ability to perceive and recall); Commonwealth v. Parent, 465

Mass. 395, 406 (2013) (no error to exclude evidence where "there was no plausible inference of bias or a motive to lie arising" from the proffered evidence).  See also Tam Bui, 419 Mass. at 401.

The excluded evidence and Diane's mental health history had minimal, if any, probative value and created a strong risk of misuse by the jury.  If this evidence was admitted it may have caused the jury to discount Diane's testimony, not because of bias or inability to perceive and recall, but because of her mental and emotional health.  See Commonwealth v. Weichel, 403 Mass. 103, 106 (1988).  The judge did not abuse his discretion in excluding this evidence.

Judgments affirmed.