## COMMONWEALTH *vs.* CORBIN ARMSTRONG.

No. 00-P-1124.

Hampshire. December 18, 2001. - April 26, 2002.

Present: GREENBERG, CYPHER, & McHUGH, JJ.

*Practice, Criminal,* Comment by judge, Confrontation of witnesses. *Evidence,* Failure to produce witness, Intent, Expert opinion. *Intent. Witness,* Expert, Cross-examination, Bias. *Armed Assault with Intent to Murder.*

Comments made by a judge during a bench trial reflected her opinion, as fact-finder, regarding the government's tactical decision not to call an expert witness, and did not suggest that the judge improperly relied on extrajudicial evidence. [597-599]

At the trial of an indictment charging assault with intent to murder, evidence that the defendant aimed a weapon at the victim, combined with the defendant's threat and his subsequent firing of the gun in close proximity to the victim, provided a sufficient basis to support a finding that the defendant possessed the intent to murder. [599]

At a criminal trial, the judge did not abuse her discretion in limiting defense counsel's cross-examination of a police witness regarding possible bias, given the tangential nature of the questions and counsel's failure to demonstrate their relevance to the matter. [599-601]

INDICTMENTS found and returned in the Superior Court Department on September 16, 1998.

The cases were heard by *Constance M. Sweeney,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. At the conclusion of a bench trial, a Superior Court judge found the defendant guilty of armed assault with intent to murder (seven counts), assault by means of a dangerous weapon (six counts), malicious injury to a police officer,

unlawful possession of a firearm, and resisting arrest.[1] On appeal, the defendant alleges that (1) the trial judge improperly relied on extrajudicial evidence, (2) the evidence as to one count of assault with intent to murder was legally insufficient, and (3) his right of cross-examination was improperly limited. None of these claims has merit, and we affirm the judgments.

1. *Facts.* Based on the evidence adduced at trial, the judge could have found as follows: Belchertown residents Thomas and Patricia Fuller were alerted by the sound of a car crash on Jenson Road in front of their house. Thomas decided to investigate while Patricia called the police. In relatively short order, he spotted the defendant, covered with blood, hobbling toward him. A wrecked vehicle, turned upside-down, was in the middle of the road. Fuller started to dial his cordless telephone. That Samaritan-like gesture was not appreciated, to put it mildly. The defendant grabbed the telephone out of Fuller's hand and yelled, "Don't do it, fucker, don't do it." As the defendant spun around and threw the telephone into the nearby woods, Fuller saw a handgun in the defendant's waistband; the two stood about ten feet apart. The defendant pulled his gun and pointed it at Fuller's chest, prompting Fuller to jump behind the nearest tree. Simultaneously, he heard a gunshot, but did not know in what direction it had been fired. He ran to his neighbor's house for help and saw the defendant walking in the opposite direction toward Route 181, an adjacent highway.

Meanwhile, Patricia Fuller heard the gunshots, called the police, and set out to find her husband. When she reached Jenson Road at the scene of the car wreck, she saw the defendant sitting on a grassy area at the side of the road. They were acquainted, so she asked, "Where's Tom?" The defendant answered, "He's okay." Because the defendant continued to brandish a weapon, she ran up a hillside out of his range.

By this time, Belchertown police Officer Edward Oey had arrived at the scene. From his patrol car, Oey saw the defendant, bleeding from his injuries, lying on the side of the road. From the top of the hill, Patricia Fuller warned him that the defendant was armed. Oey commanded the defendant to show his hands.

---

[1]The judge found the defendant not guilty on one other count each of armed assault with intent to murder and assault with a dangerous weapon.

The defendant responded by pulling out his handgun and firing three more shots, this time at Oey, who drove down the road a short distance to avoid him. One shot just missed the left side mirror of his cruiser, another struck the center pillar post, and the third strayed far from the mark.

Another Belchertown officer, William Zobka, then arrived in his police car. Having heard the three shots that the defendant had fired at Oey, Zobka got his shotgun from the cruiser and, with a third officer, began to move through the woods along Jenson Road in pursuit of the defendant.

At the same time, three State police officers arrived in separate vehicles and stopped beside Oey's cruiser. Those officers and Oey started to cross Jenson Road to join up with Zobka and his partner. While they were in the middle of the road, Oey and the three State police officers saw three muzzle flashes and heard three more bullets pass by them. Those shots were fired at a point about ninety feet south of where they were standing. It is not necessary to recount all of the events that followed, except to say that by the time the police had flushed the defendant out of the woods, by their estimation he had fired an additional eight to nine rounds at them. On several occasions, the State police officers were forced to return fire. Eventually, the defendant was found cowering behind a tree and was placed under arrest. On the following day, police retrieved the defendant's Glock semiautomatic pistol. Many discharged cartridges were found in areas at or near where the various officers and Thomas Fuller had confronted the defendant.

2. *Alleged reliance on extrajudicial evidence.* The defendant called Dr. Ronald Ebert, a licensed psychologist, for the purpose of establishing that the defendant would have been unable to form the specific intent to murder, an essential element of assault with intent to murder. *Commonwealth* v. *Henson*, 394 Mass. 584, 590-592 (1985). From a review of the defendant's medical records, which indicated that he was suffering from major depression, and from interviews with the defendant, Dr. Ebert formed an opinion concerning the defendant's intent. Dr. Ebert concluded that the defendant, who just before his capture had asked the police to kill him, was suicidal and was suffering from cocaine psychosis. Another physician called by the

defendant, Dr. Brian Pape, opined that the defendant's excessive use of drugs and his expressed death-wish were consistent with a person who was suicidal. The prosecution had agreed in a pretrial conference to notify the defense of any expert witnesses and their expected testimony. The defense was advised that the Commonwealth might call a medical expert, but ultimately the prosecution did not submit any expert evidence, although a government medical expert was present in the courtroom during the defense's presentation.

During closing argument, defense counsel commented on the absence of any expert testimony for the Commonwealth and stated that "the deafening silence of the Commonwealth's experts, one of whom was here in the courtroom, confirmed much of what the defendant's experts had concluded about his state of mind." Then defense counsel said, "I'd suggest the Court can take that into consideration." To this argument, the judge replied:

> "I draw no adverse inference against the Commonwealth for not calling their psychologist. There was no reason to do so. He had already reviewed the testimony of Fuller and the law enforcement officers on the scene, which clearly established and convinced him that the defendant was focused in his action and on achieving the desired result of killing the target when he fired at the target."

The plaintiff alleges that these comments by the judge suggested that she improperly relied on extrajudicial evidence.

The limitations bearing on a judge's comments on the evidence when a case is tried without a jury were discussed in *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 308 (1992). In that case, during defense counsel's closing argument, the judge interjected a remark regarding the defendant's entrapment defense, and implied that the defendant's supervisor at work, whom the government had used to importune him to sell cocaine to acquaintances, may not have been an agent of the government. *Id.* at 306-307. We held in *Colon* that the judge was warranted in his ultimate finding that the defendant was not entrapped, and that his remark, corroborated by the record, was nothing more than a comment that the evidence was very thin on the

agency question. *Id.* at 307. We concluded, "[c]omments made by a judge in colloquy with counsel, particularly when counsel are permitted to carry on for the purpose of persuading the judge, are not to be taken as a ruling of law by the judge." *Id.* 308. Moreover, "it is presumed that the judge as trier of fact applies correct principles." *Commonwealth* v. *Milo M.*, 433 Mass. 149, 152 (2001), quoting from *Commonwealth* v. *Colon*, 33 Mass. App. Ct. at 308.

Here, the judge merely put on record her view that she would draw no adverse inferences from the fact that the government did not use an expert witness in rebuttal. Failure of a party to call an available witness expected to give testimony on an important aspect of a case carries with it the reasonable implication that had the witness been called, he or she would have given testimony unfavorable to the party. See *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134-136 (1986). That is not to say, however, that the trier of fact must draw the inference in every case. *Id.* at 134-135 (noting that inference should only be drawn in "clear cases"). Given the substantial evidence tending to show the defendant's specific intent to kill his pursuers and the scant evidence to negate that intent, the judge reasonably may have concluded that the Commonwealth determined that expert testimony was not needed to satisfy its burden.

On the record, as the case was developed, it was open for the judge to reject the defense experts' testimony on the issue of intent. Impairment of a defendant's ability to make a decision in a normal manner, through drug use or otherwise, by no means requires an inference of inability to form specific intent. See *Commonwealth* v. *Griffith*, 404 Mass. 256, 259-260 (1989). Here, the Commonwealth offered eyewitness testimony showing that the defendant had engaged in a sustained and directed attack on a number of police officers. This provided a legally sufficient basis for inferring the requisite specific intent, the defendant's drug use notwithstanding.

Positing an alternative basis for the Commonwealth's decision to refrain from calling a medical expert was well within the judge's discretion as a factfinder. While it certainly would have been better for the judge to have phrased her view of the evidence in a different way — specifically, to have avoided any

suggestion that she had been influenced by extrajudicial evidence — we see no reversible error in her remarks. In the end, we view her comments as her opinion, as factfinder, as to the government's tactical decisions, not any reference to the judge's knowledge of unadmitted evidence.

3. *Denial of the defendant's motion for a required finding.* The defendant contends that the Commonwealth introduced legally insufficient evidence to support his conviction for assault with intent to murder Thomas Fuller. Specifically, he alleges that, at the close of the Commonwealth's case, looking at the evidence in the light most favorable to the Commonwealth, there was insufficient evidence on the element of intent. To support this argument, he refers to Fuller's direct testimony that the defendant threw the telephone to a spot just adjacent to the tree he used for cover, and Fuller heard only one shot. He relies on the Commonwealth's ballistics expert, who opined that a shot that penetrated the telephone was fired from a distance of not more than one or two feet away. From this evidence, he argues that only the shooting of the telephone was intentional, and that this is not a case in which the defendant aimed the gun at Fuller and accidentally hit the telephone.

The argument has surface appeal, but upon a review of the record, we reject it. The aiming of the weapon at Fuller combined with the defendant's threat and his subsequent firing of the gun in close proximity to Fuller provides a sufficient basis for finding an intent to murder. While such an inference certainly was not inescapable here, that is not the standard to which the Commonwealth is held. All that is required is that evidence provide a reasonable and possible basis for inferring the existence of all of the required elements of a crime charged. We also note that the judge here was entitled to take into account the defendant's actions immediately subsequent to his confrontation with Fuller in assessing the defendant's intentions with respect to same. Looking at the evidence in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), there was ample evidence to support the charge of assault with intent to murder Fuller. See *Commonwealth* v. *Cullen*, 395 Mass. 225, 230 (1985).

4. *Limitation on defendant's cross-examination.* The defen-

dant's final contention on appeal is that his constitutional right of confrontation of adverse witnesses was violated when he was prevented from delving into State police Officer Gary Hoskins's filing of a "use of force report," which Hoskins did not complete until six days after the defendant's arrest. Hoskins was one of several State police officers who had exchanged gunfire with the defendant during the chase through the woods just before the defendant's arrest. Over the defendant's objection, the following exchange occurred between defense counsel and Hoskins:

> Q.: "The reason a [union] representative is there is so your superiors can't force you to write a report right away, right?"

> PROSECUTOR: "Objection at this point, your Honor. Relevance."

> JUDGE: "That's sustained."

> Q: "But, the fact is, any time there is use of force, this issue of force is reviewed on a number of levels, is that right?"

> A: "That's correct, sir."

> Q: "It's reviewed to see if use of lethal force, particularly, was properly employed, is that correct?"

The judge sustained the prosecutor's objection and nothing more was asked about the subject.

We suppose the purpose of defense counsel's last question (there was no offer of proof) was to suggest that the witness took extra time to craft a report that exaggerated the defendant's gunslinging to justify the officers' use of their weapons against him. In his brief, the defendant argues that union representatives were present during the review inquiry "to protect the police against a claim [of improper use] of their weapons," and that the delay was a prophylactic measure against a possible claim that the police had used excessive force to arrest the defendant.

Reasonable cross-examination to show bias and prejudice of a witness is a matter of right. *Commonwealth v. Ahearn,* 370

Mass. 283, 287 (1976); *Commonwealth* v. *Hanson,* 394 Mass. 584, 586 (1985). However, this rule is not ironclad; weighed in addition is the correlative principle that the right of cross-examination is not infringed by reasonable limitations as, for example, where the matter sought to be elicited has been sufficiently aired. See *Commonwealth* v. *Doherty,* 394 Mass. 341, 349-350 (1985); *Commonwealth* v. *Rodwell,* 394 Mass. 694, 700 (1985).

The discretion of the trial judge in determining the extent to which counsel may explore otherwise immaterial lines of inquiry is considerable. *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 714-715 (1974). Such was the tangential nature of the excluded questions that we do not think the judge abused her discretion. See *Commonwealth* v. *Sendele,* 18 Mass. App. Ct. 755, 761 (1984). The judge limited defense counsel's questioning of Hoskins along the lines of the nature of the internal review. However, she permitted defense counsel to establish that a report had been filed and the conditions that required the filing. We hasten to add that the mere fact that Hoskins was required to file the report does not, by itself, establish bias.

While the defendant's appeal speculates that further questioning might have revealed an ulterior motive to inflate the danger, defense counsel did not raise this point with the judge. Where it is not clear that the proffered question seeks evidence of bias, the cross-examiner must be prepared to explain the relevance. *Commonwealth* v. *Cheek,* 374 Mass. 613, 614-615 (1978). It is incumbent upon the proponent to make a "plausible showing" that circumstances supporting the claim of bias actually exist. *Commonwealth* v. *Tam Bui,* 419 Mass. 392, 399-400, 401-402, cert. denied, 516 U.S. 861 (1995). This did not occur. *Id.* at 401-402. Contrast *Commonwealth* v. *Civello,* 39 Mass. App. Ct. 373, 374-378 (1995); *Commonwealth* v. *Hall,* 50 Mass. App. Ct. 208, 211-213 (2000).

*Judgments affirmed.*