## COMMONWEALTH *VS.* MOORE OMONIRA.

No. 02-P-105.

Bristol. May 13, 2003. - September 5, 2003.

Present: GRASSO, MCHUGH, & MILLS, JJ.

*Practice, Criminal,* Cross-examination by prosecutor, Comment by prosecutor. *Evidence,* Cross-examination, Bias, Relevancy and materiality, Credibility of witness. *Witness,* Bias, Credibility.

At a criminal trial, the judge did not err in permitting the prosecutor to cross-examine the defendant's wife as to her knowledge of possible deportation consequences attendant to the defendant's conviction, where the wife's testimony was relevant to show her potential bias and interest in the outcome of the case, more particularly, that she had a strong interest, both emotionally and financially, in ensuring that the defendant was not convicted and subjected to the risk of deportation. [203-205]

At a criminal trial, the prosecutor's statement during closing argument that a certain police witness was "the most laid back police officer I ever saw," and that "[h]e's completely honest," amounted to a personal opinion as to the credibility of the witness and, as such, was a violation of Mass.R. Prof.C. 3.4(e); however, notwithstanding the prosecutor's misconduct in vouching for the police officer's credibility, reversal of the defendant's conviction was not warranted, in light of (1) the judge's instructions to the jury; (2) the fact that the judge made an immediate caution to the prosecutor, who thereafter made no further improper comment; and (3) the general weight of the evidence against the defendant. [205-207]

There was no merit to a criminal defendant's contention that the totality of certain alleged errors at trial cumulated to create a substantial risk of a miscarriage of justice. [207]

COMPLAINT received and sworn to in the Fall River Division of the District Court Department on October 6, 2000.

The case was tried before *Deborah A. Dunn*, J.

*J. Andrew White* for the defendant.

*Adam T. Narris*, Assistant District Attorney, for the Commonwealth.

MILLS, J. After jury trial, the defendant appeals from his

convictions for operating a motor vehicle while under the influence of intoxicating liquor, third offense, G. L. c. 90, § 24, and operating a motor vehicle with a suspended license, G. L. c. 90, § 23. On appeal, he claims that (1) the judge abused her discretion in allowing cross-examination concerning deportation consequences; (2) the judge's instructions were insufficient to mitigate the prosecutor's improper vouching for a witness in closing argument; and (3) the alleged errors, including a further reference to the defendant's "foreignness" in the prosecutor's closing argument, cumulated to create a substantial risk of a miscarriage of justice. We affirm.

1. *Background.* There was testimony at trial that on May 5, 2000, at approximately 4:30 P.M., the defendant's car collided with a car driven by Jennifer Marshall as she was leaving her parents' driveway in Fall River. Both drivers stepped out of their cars; the defendant left his two children in his car (which was still in the middle of the street), walked to the side of the street and, while holding his head and saying, "Oh no, oh no," began rolling around in the grass. Officer William Nasser of the Fall River police department responded to a report of the accident. He observed the damage to both cars, and asked the defendant for his license and registration. The defendant admitted that his license had been suspended or revoked, and he had difficulty locating his registration, twice giving Nasser the wrong papers before locating the registration. Nasser, after detecting an odor of alcohol on the defendant's breath, and noting that the defendant's speech was slurred, administered two field sobriety tests. The defendant passed the heel-to-toe test, but was unable to count backwards from fifty, failing two attempts. Nasser arrested the defendant after concluding that he had failed the test and was drunk. During booking, the defendant had red eyes and slurred speech.

The defendant was born in Nigeria, had come to the United States in 1978, and had lived in Fall River for approximately twenty-three years. He denied speeding and drinking alcohol, and said that Marshall had hit him. He denied failing the counting portion of the field sobriety test, and that he had rolled in the grass. The defendant's eleven year old son testified that he had been in the passenger's seat of his father's car at the time

of the accident. He testified that Marshall's car hit his father's car, that his father had been driving at about fifteen miles per hour, and that Marshall was going twenty-five miles per hour. He further testified that his father has a Nigerian accent, talks "African," and that it is sometimes hard to understand him.

On direct examination, the defendant's wife testified that the defendant had a Nigerian accent, and that sometimes even she had difficulty understanding him. She also testified that, after being notified by her husband, she went to the accident scene soon after the accident. She further testified that she did not smell alcohol on the defendant, that he had no difficulty walking, and that she was able to understand what he was saying to her.

On cross-examination, the Commonwealth attempted to demonstrate the bias of the defendant's wife. To this end, the prosecutor questioned her as follows regarding the impact a conviction would have on his immigration status:

> Q. "You don't want him to be convicted of any charges?"
>
> A. "Yes."
>
> Q. "You know that there's, in fact, a possible deportation issue?"
>
> Defense counsel: "Objection, Your Honor."
>
> The judge: "Overruled."
>
> A. "Yes."
>
> Q. "So you know that a conviction may affect his status to stay in this country?"
>
> Defense counsel: "Objection, Your Honor."
>
> The judge: "Overruled."
>
> A. "Yes."
>
> Q. "And that's very important to you, isn't it?"
>
> A. "Yes."

Q. "He's the father of your children?"

A. "Yes, he is."

Q. "You don't want him convicted?"

A. "That's correct."

Q. "You want him to stay in this country?"

A. "Of course, yes."

During her closing, after defense counsel had attacked Officer Nasser's credibility, the prosecutor argued, concerning Nasser, that "[i]f anything, he's the most laid back police officer I ever saw. He's completely honest." The defendant immediately objected and the judge responded, "Without comment on the credibility. You may continue." There was no request for a curative instruction.

Later in the argument, the prosecutor stated concerning the defendant, "He's been in this country — well, he's been in Fall River twenty-two years. We don't know how long he's been in the country." The defense raised no objection to this comment. Instructing the jury after closing arguments, the judge emphasized that counsel's closing arguments were not evidence and that it was the jury's duty to decide the credibility of the witnesses.

2. *Cross-examination as to potential deportation consequences.* The defendant argues that it amounted to prejudicial error to permit the prosecutor to cross-examine his wife as to her knowledge of possible deportation consequences attendant to the conviction. In the circumstances of this case, however, the judge did not err in permitting such questioning.

Certainly, references to a defendant's ethnicity or national origin are potentially highly prejudicial and should be approached with caution. We have emphasized that "[p]rosecutors 'may not appeal to [ethnic or] racial prejudice to obtain a guilty verdict.'" *Commonwealth* v. *Lara*, 39 Mass. App. Ct. 546, 551 (1995), quoting from *Commonwealth* v. *Washington*, 28 Mass. App. Ct. 271, 273 (1990). However, "[r]easonable cross-examination to show bias and prejudice of a witness is a matter

of right." *Commonwealth* v. *Armstrong*, 54 Mass. App. Ct. 594, 600 (2002). "A judge may not restrict cross-examination of a material witness by foreclosing inquiry into a subject that could show bias or prejudice on the part of the witness." *Commonwealth* v. *Tam Bui*, 419 Mass. 392, 400 (1995), quoting from *Commonwealth* v. *Aguiar*, 400 Mass. 508, 513 (1987). "If, on the facts, there is a possibility of bias, even a remote one, the judge has no discretion to bar all inquiry into the subject." *Commonwealth* v. *Tam Bui*, *supra*. Notwithstanding, "this rule is not ironclad; weighed in addition is the correlative principle that the right of cross-examination is not infringed by reasonable limitations as, for example, where the matter sought to be elicited has been sufficiently aired." *Commonwealth* v. *Armstrong*, *supra* at 601. See *Commonwealth* v. *Tam Bui*, *supra*.

In the case at bar, the evidence elicited from the defendant's wife on cross-examination showed her knowledge of the defendant's possible deportation if convicted. This evidence had not been aired and was not redundant. It was relevant to show the witness's potential bias and interest in the outcome of the case, see *Commonwealth* v. *Frate*, 405 Mass. 52, 54 (1989), more particularly, that she had a strong interest, both emotionally and financially, in ensuring that the defendant was not convicted and subjected to the risk of deportation. The Commonwealth had a right to explore this potential bias, on a good faith basis, and the jury had a right to consider it when deciding how much weight to give to the witness's testimony.

Further, we consider it significant that defense counsel raised the issue of the defendant's ethnicity or national origin with every witness, and during closing argument. On direct examination, the defendant testified that he was born in Lagos, Nigeria. The defendant's son testified on direct examination that the defendant is Nigerian and speaks "African." The defendant's wife testified on direct examination that he was Nigerian and spoke with a thick accent, which even she could sometimes not understand. On cross-examination, defense counsel asked both Officer Nasser and Jennifer Marshall if the defendant had a foreign accent. Finally, during closing argument, defense counsel argued that, because the defendant spoke English with a heavy foreign accent, Nasser could not understand him and assumed he was drunk and at fault for the accident.

The judge did not err in allowing the prosecutor to cross-examine the defendant's wife, on a good faith basis, as to her knowledge of the defendant's possible deportation if convicted. There was at least a "possibility of bias." *Commonwealth* v. *Tam Bui, supra.*[1]

3. *Vouching by the prosecutor for a principal witness's credibility*. The defendant also argues that the prosecutor's comment concerning Nasser during closing argument — "he's the most laid back police officer I ever saw. He's completely honest" — to which the defendant immediately objected, amounted to improper vouching. Because the defendant seasonably objected, we review to determine whether the prosecutor's comment caused prejudicial error. See *Commonwealth* v. *Pearce*, 427 Mass. 642, 644 (1998).

The prosecutor's comment was highly improper. It is well established that counsel may not "express[] a personal belief in the credibility of a witness . . . or . . . indicate[] that he or she has knowledge independent of the evidence before the jury verifying a witness's credibility." *Id.*, quoting from *Commonwealth* v. *Ciampa*, 406 Mass. 257, 265 (1989). See *Commonwealth* v. *Nicholson*, 20 Mass. App. Ct. 9, 17-18 (1985).[2] See also Smith, Criminal Practice & Procedure § 1860 (2d ed. 1983) ("It is improper for an attorney for either party to state his personal beliefs or opinions in arguments to the jury. If counsel does state his or her personal belief or opinion, the better practice is that the trial Judge give immediate instructions to the jury to disregard the statement and also to have the offending counsel retract the statement," and noting that if there is

---

[1]Further, in considering the potential for prejudice, the judge, in the circumstances of this case (i.e., the defendant had been here for twenty-three years and was apparently in good relationship to his wife and two minor children) may have concluded that the deportation risk worked to the advantage of the defendant as a matter of jury sympathy.

[2]In *Commonwealth* v. *Nicholson*, 20 Mass. App. Ct. at 18, we held that the prosecutor improperly vouched for the credibility of a police officer witness by simply stating, "[H]e is a great cop, he is a worker and I will take him any day, and that goes for [two other police witnesses] too." We concluded, however, that the prosecutor's comments, taken in the context of the entire argument, and the judge's charge that it was for the jury to assess and evaluate the credibility of witnesses, did not justify a reversal of the conviction on the ground of risk of a miscarriage of justice. See *ibid.*

"improper reference to counsel's personal opinion as to the credibility of the witnesses, an adequate curative instruction from the Judge in his or her instructions may save the case from reversal" [footnotes omitted]).

The Commonwealth argues that the prosecutor's statements that Officer Nasser had a "laid back" demeanor and appeared honest were not personal opinions. We find this assertion extravagant. It is inconceivable that the statements could be intended or understood as anything other than personal opinions or, even worse, as personal opinions based upon particular association and experience outside the evidence of the case. The Commonwealth also argues that the improper argument was somehow made proper because the comments were in response to a "lengthy attack on Officer Nasser's credibility." The defendant's argument concerning Nasser's credibility does not excuse the prosecutor's comment. Although a prosecutor may fairly respond to an attack on the credibility of a government witness, "prosecutors may not submit their own personal opinions regarding a witness's credibility." *Commonwealth* v. *Smiledge*, 419 Mass. 156, 160 (1994). The prosecutor's statement amounted to a personal opinion as to the credibility of a witness and, as such, was a violation of Mass.R.Prof.C. 3.4(e), 426 Mass. 1389 (1998). Compare *Commonwealth* v. *Cifizzari*, 397 Mass. 560, 579 (1986).

Notwithstanding the prosecutor's misconduct in vouching for Nasser's credibility, we hold that reversal of the defendant's conviction is not warranted, in light of (1) the judge's several instructions to the jury; (2) the fact that the judge made an immediate caution to the prosecutor, who thereafter made no further improper comment; and (3) the general weight of the evidence against the defendant.

The defendant objected immediately to the prosecutor's violation, and the judge responded immediately, "Without comment on the credibility. You may continue." At the beginning of her charge, the judge instructed that "the opening . . . and the closing arguments are not evidence." The judge also instructed pointedly on the role of jurors in determining witness credibility. In preliminary instructions, prior to opening statements, the judge instructed that opening and closing arguments are not

evidence, and that it was solely the jury's responsibility to determine whom to believe and how much weight to give to a witness's testimony. The trial was not protracted (two days), and although the judge did not follow the "better practice," Smith, *supra*, the instructions, and the judge's response, in these circumstances were adequate.

In concluding that the prosecutor's comment did not cause prejudicial error, we emphasize that Nasser, while a principal witness, was not the only witness. The victim-witness testified that after the collision, the defendant left the car in the street, in a traveled lane, with two children in the car; that the defendant held his head and rolled around in the grass for two or three minutes while saying "Oh no, oh no"; and that he requested that the witness not call the police. This testimony was contradicted by the defendant in a single aspect: he denied rolling on the grass. The victim-witness was not otherwise cross-examined; and the defendant did not further counter the evidence. Additionally, while the defendant's wife and eleven year old son were called by the defendant, their testimony could certainly have been discounted by the jury in determining the defendant's guilt. The general weight of the evidence was against the defendant.

4. *Cumulative impact of alleged errors.* Finally, the defendant argues that the totality of the alleged errors, including further reference to the defendant's "foreignness" in the prosecutor's closing argument, cumulated to create a substantial risk of a miscarriage of justice. For the reasons outlined *supra*, we disagree.

*Judgments affirmed.*