Boubacar DOUMBOUYA,
Plaintiff–Appellant,

v.

The COUNTY COURT OF the CITY AND COUNTY OF DENVER; Hon. Andre Rudolph, one of the judges thereof; and the City and County of Denver, Defendants–Appellees.

No. 09CA2271.

Colorado Court of Appeals,
Div. V.

Dec. 24, 2009.

Ridley, McGreevy & Weisz, P.C., Barrett Weisz, Robert T. Fishman, Denver, Colorado, for Plaintiff–Appellant.

David R. Fine, City Attorney, Vince A. DiCroce, Assistant City Attorney, Melissa Drazen–Smith, Assistant City Attorney, Nate Fehrmann, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CONNELLY.

Where a mistrial is declared in a criminal prosecution over defense objection, double jeopardy bars retrial unless there was "manifest necessity" for the mistrial. Here, the county court declared a mistrial during cross-examination of an alleged victim in the misdemeanor assault case against defendant, Boubacar Doumbouya. Defendant then filed a C.R.C.P. 106(a)(4) action contending that retrial would violate double jeopardy. (Though he is now a plaintiff, we continue to refer to Mr. Doumbouya as defendant.) The district court denied relief.

We reverse and remand for entry of an order precluding retrial because the mistrial was not manifestly necessary. The cross-examination question that prompted it appears to have been a proper one; at the very least, we are not convinced it was improper. Accordingly, the prosecution has not carried its heavy burden of showing manifest necessity for the mistrial.

## I. Background

The underlying misdemeanor charges arose from an incident at a downtown Den-

ver nightclub. Defendant ultimately was charged with assaulting his estranged wife and one of her friends, with threatening the wife, and with disturbing the peace.

Defendant's theory of defense was that his estranged wife had fabricated the claims to gain leverage in a contentious custody battle involving the couple's infant son. At the beginning and again at the end of opening statement, defense counsel told the jury of the defense contention that the wife would "do anything," including making false claims against defendant, to keep custody.

The wife was the first witness against defendant. Defense counsel began cross-examination by asking several questions about the then-ongoing marriage dissolution and child custody proceedings. The prosecution objected—stating "we're here on a criminal trial not on the divorce case"—but the court overruled the objection and allowed this line of questioning to continue. While allowing defense counsel "a little bit of latitude" in this area, the court did urge counsel to "cut to the chase."

Further questioning established that the wife had taken the couple's son when she left defendant (before the nightclub incident) and the courts were deciding custody. Two questions followed:

Q. You know that [defendant] is from Africa?

A. Yes.

Q. You know that if he is found guilty of this he'll be deported?

The prosecution objected before the second question was answered, stating it was "completely improper to bring that up in this proceeding." The court promptly ordered a recess.

Outside the jury's presence, the prosecutor moved for a mistrial. He argued the jury had been "irrevocably tainted" by questioning that was "a ploy to invoke sympathy for the defendant" and amounted to "probably the worst violation [he had] ever seen." Defense counsel responded that the question went to the "heart of our defense" and defendant was constitutionally entitled to ask it. Counsel proffered that she had spoken with defendant's immigration attorney, that this

assault conviction would lead to deportation, and that the wife "knows all of that."

The county court "vehemently disagree[d]" with defense counsel's arguments. It observed that immigration, whether legal or illegal, is a "hot button topic" in today's society. While noting that the question could elicit sympathy from a jury concerned that defendant might be deported and never see his son again, it also observed that defendant could have been prejudiced (and properly could have objected) had the prosecution injected immigration and deportation issues into the case.

When the court stated its intent to declare a mistrial, defense counsel objected and suggested any prejudice could be cured by a limiting instruction. The court disagreed, stating the "genie is out of the bottle." It accordingly discharged the jury.

Defendant later moved to dismiss the charges. After the county court denied the motion, defendant filed a Rule 106 action.

The district court denied Rule 106 relief. It concluded there was manifest necessity for the mistrial because the cross-examination question improperly "may provoke the jury into believing it is determining issues of immigration and domestic relations" and the risk of unfair prejudice to the prosecution could not have been cured by instructing the jury to ignore the question.

The supreme court granted certiorari to review the district court order denying relief. After hearing oral argument, however, the supreme court transferred the case here.

## II. Jurisdiction and Standard of Review

■ Because the county court's order denying dismissal was not a final order appealable to the district court, defendant properly raised his double jeopardy challenge to retrial by filing a Rule 106 action. *See Paul v. People,* 105 P.3d 628, 631–32 (Colo.2005) (discussing *County Court v. Ruth,* 194 Colo. 352, 575 P.2d 1 (1977)). We have jurisdiction over the appeal from the district court's order denying relief. *See id.*

Defendant's right to relief turns on whether the county court "has exceeded its juris-

diction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law." C.R.C.P. 106(a)(4). Our supreme court has suggested that a trial court acts in "excess of [its] jurisdiction" by proceeding to trial on jeopardy-barred charges. *People v. Segovia,* 196 P.3d 1126, 1129 (Colo.2008); *Paul,* 105 P.3d at 631, 633. Regardless of whether the issue is truly jurisdictional, defendant had a constitutional right not to be retried absent manifest necessity for the mistrial. *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Segovia,* 196 P.3d at 1133.

■ Rule 106(a)(4) expressly provides for abuse-of-discretion review, and the double jeopardy issue likewise turns on whether the mistrial ruling was an abuse of discretion. *See Washington,* 434 U.S. at 513–14, 98 S.Ct. 824; *People v. Schwartz,* 678 P.2d 1000, 1011 (Colo.1984). Because we are in the same position as the district court in reviewing the county court's action, we do not defer to its Rule 106 ruling. *See Byrd v. Stavely,* 113 P.3d 1273, 1275 (Colo.App.2005).

### III. Cross–Examination and Manifest Necessity

■ A conclusion that there was manifest necessity for a mistrial requires two determinations: first, that the jury was exposed to inadmissible information; and second, that less drastic alternatives would not have cured the prejudice. The need for making this first determination as a predicate for the second is illustrated by *Arizona v. Washington* and *People v. Segovia.*

The Court in *Washington* "start[ed] from the premise that defense counsel's comment [regarding prosecutorial misconduct leading to reversal of a prior conviction] was improper and may have affected the impartiality of the jury." 434 U.S. at 511, 98 S.Ct. 824. Its opinion, therefore, focused on whether the trial court had abused its discretion by concluding that steps short of a mistrial could not cure the prejudice. In contrast, our supreme court in *Segovia* held the allegedly prejudicial information (a prosecution witness's act of shoplifting) was a proper line of cross-examination. 196 P.3d at 1129–33.

Because there was no "error in the proceedings," there could be no manifest necessity for a mistrial. *Id.* at 1134.

■ It is not surprising, therefore, that much of the parties' dispute here involves whether defendant was entitled to propound the cross-examination question that prompted the mistrial. For reasons discussed below, we tend to agree with defendant that the question was a proper one. In any event, because "the prosecutor must shoulder the burden of justifying the mistrial," *Washington,* 434 U.S. at 505, 98 S.Ct. 824—and this "burden is a heavy one," *id.*—our grave doubts about the correctness of the underlying ruling are resolved in favor of defendant's double jeopardy rights.

■ We begin our review of the underlying ruling with the premise that criminal defendants have a right, of constitutional magnitude, to engage in " 'otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness.' " *Kinney v. People,* 187 P.3d 548, 559 (Colo.2008) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). A trial court's "[e]rror in limiting a defendant's ability to challenge the credibility of the evidence against him ... by restricting the cross-examination of prosecution witnesses ... implicates the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing." *Krutsinger v. People,* 219 P.3d 1054, 1060 (Colo.2009) (internal quotations of United States Supreme Court cases omitted).

■ Of course, under both the Constitution and evidentiary rules, trial courts have "wide latitude ... to impose reasonable limits on cross-examination because of concerns about harassment, prejudice, repetition, or marginal relevance." *Kinney,* 187 P.3d at 559. And not every erroneous ruling limiting cross-examination rises to the level of a constitutional violation. *See Krutsinger,* 219 P.3d at 1061–62.

It would be constitutionally problematic to preclude relevant impeachment simply because immigration is a "hot button topic."

Throughout our nation's history, race also has been a hot button topic. In *Olden v. Kentucky*, however, the Supreme Court rejected a ruling that a defendant's right to cross-examine an alleged victim was "outweighed by the danger that revealing [her] interracial relationship [with another man] would prejudice the jury against her." 488 U.S. 227, 232, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). It reasoned that "[s]peculation as to the effect of jurors' racial biases cannot justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [the complaining witness's] testimony." *Id.*

██ Here, as in *Olden*, the trial court cited the potentially heated nature of an issue "without acknowledging the significance of, or even adverting to, [the] constitutional right to confrontation." *Id.* It is possible some jurors could react viscerally—perhaps in defendant's favor and at least equally possibly to his detriment—to any mention of immigration. But this possibility cannot categorically preclude relevant cross-examination.

Defendant has shown that the cross-examination question was potentially relevant to impeaching the key prosecution witness. The theory of defense required a motive for defendant's estranged wife to accuse him falsely. That motive, according to the defense, was a conviction that would lead to the wife's being awarded custody of the couple's son. If that is a proper theory to offer the jury—as the trial court recognized by allowing cross-examination on the child custody dispute—so too is the questioning regarding the wife's belief that a conviction could lead to defendant's deportation, which would effectively give wife full-time custody and thus inure even further to her benefit.

Other courts have recognized that the potential immigration consequences of a criminal conviction may be offered to impeach witnesses by supplying a possible motive for falsifying testimony. In *Sansom v. State*, for example, a Texas appeals court held the defendant's confrontation rights were violated by a trial court ruling precluding him from cross-examining his estranged wife regarding her citizenship and fear of deportation that allegedly provided her a motive for falsely

accusing the defendant in order to prevent him from seeking to divorce her. 292 S.W.3d 112, 119–21 (Tex.App.2008) (*review granted* Nov. 5, 2008). Indeed, even where it is the prosecution impeaching witnesses based on their alleged desire to save a defendant from deportation, some courts have upheld rulings allowing cross-examination regarding the witnesses' understanding of immigration consequences. *E.g., United States v. Garcia,* 994 F.2d 1499, 1507 (10th Cir.1993); *Commonwealth v. Omonira,* 59 Mass.App.Ct. 200, 794 N.E.2d 1248, 1252 (2003).

The prosecution in this case has not offered a persuasive ground on which the county court properly could have precluded cross-examination regarding the estranged wife's understanding of the immigration consequences of a conviction. According to its appellate brief, "[t]he form of [defense counsel's] question is the primary problem": "The 'question' was not a question; rather, it was a statement by [counsel] to the jury that a direct consequence of a conviction would be deportation."

There are several problems with the prosecution's contention that the question—"You know that if he is found guilty of this he'll be deported?"—was objectionable as a matter of form. First, this was not the stated basis for the county court's ruling. Second, we are aware of no authority that a mistrial could ever be justified simply because of a problem with a question's form. Finally, we perceive nothing improper with the form of the question. Defense counsel was entitled to ask leading questions on cross-examination, CRE 611(c), and in practice "[a] leading question is [often] just a statement disguised as a question." Kenneth J. Melilli, *Cross–Examination: To Lead or Not to Lead?,* 27 Am. J. Trial Advoc. 149, 151 (2003); *see also* Larry S. Pozner & Roger J. Dodd, *Cross–Examination: Science and Techniques* §§ 8.13 & 8.14 (2d ed.2004) (recommending use of short declarative statements on cross); Steven Lubet, *Modern Trial Advocacy* 93, 105 (2d ed.1997) (same).

Nor are we persuaded by the prosecution's contention that this cross-examination unduly would have extended the trial by requiring expert testimony regarding the actual immigration consequences of a conviction. The error in this contention is that proper im-

peachment requires showing not that the witness's potential interest in fact will eventuate but rather "simply" that the witness had a "hope or expectation" of it eventuating. *Kinney,* 187 P.3d at 560–61 (defense not required to show that prosecution witness was in fact promised leniency for testimony).

Thus, contrary to the prosecution's argument, the relevance of the cross-examination did not turn on whether defendant in fact would be deported following a conviction. Rather, because the point was to establish the estranged wife's potential bias, the only issue was whether the wife *believed* defendant would be deported in the event of conviction. *See United States v. Oliveros,* 275 F.3d 1299, 1306–07 (11 th Cir.2001) (upholding exclusion of testimony by "expert witness about immigration law" regarding the immigration benefits that testifying witness in fact would receive because "[w]hen it comes to a witness' motive to lie, ... what counts is not the actual extent of the benefit the witness has received or will receive, but the witness' belief about what he is getting"). And, while the wife was never allowed to answer, defense counsel proffered that the wife would have admitted her belief that defendant would be deported—indeed, counsel actually stated that the wife "knows" that defendant would be deported.

■ At oral argument, the Assistant City Attorney seemed to concede that the wife's understanding of potential immigration consequences could be relevant to bias but maintained that the question was improperly framed in term of the wife's "know[ledge]" rather than "belief." "Belief," however, "is a component of knowledge," *Harrison v. United States,* 708 F.2d 1023, 1028 (5th Cir.1983), differing from knowledge principally in degree. *See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("the word 'knowledge' connotes more than subjective belief"); *compare* Bryan A. Garner, *Black's Law Dictionary* 950 (9th ed.2009) (defining "knowledge" in relevant part as "a state of mind in which a person has no substantial doubt about the existence of a fact") *with id.* at 175 (defining "belief" as "[a] state of mind that regards the existence of something as likely or relatively certain"). Where, as here, the issue is whether a witness is biased because she believes she knows something to be true, framing a question in terms of knowledge rather than belief is a distinction without a difference. *Cf. American Communications Ass'n v. Douds,* 339 U.S. 382, 411, 70 S.Ct. 674, 94 L.Ed. 925 (1950) ("courts and juries every day pass upon knowledge, belief and intent—the state of men's minds").

It thus appears that defendant had a right, possibly of constitutional magnitude, to inquire into the wife's understanding of the immigration consequences of a conviction. Nonetheless, we need not hold definitively that there were no possible grounds on which the trial court properly could have precluded the cross-examination. The fact that we have grave doubts as to the propriety of precluding the cross-examination means the prosecution has not carried its heavy burden, under *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. 824, of demonstrating the necessity for a mistrial. *Cf. Espinoza v. District Court,* 180 Colo. 391, 396, 506 P.2d 131, 134 (1973) (double jeopardy precluded retrial where events prompting mistrial "were either completely proper actions by the public defender or involved at most only minor improprieties"); *see also Taylor v. Dawson,* 888 F.2d 1124, 1131–33 (6th Cir.1989) (no manifest necessity for mistrial where, unlike in *Washington,* court started with premise that the evidence prompting the mistrial was of the type that "ordinarily *is* admissible"); *State v. Seefeldt,* 261 Wis.2d 383, 661 N.W.2d 822, 831 (2003) (state did not carry burden of proving manifest necessity where mistrial was based on reference to evidence that "would likely have been admissible during trial").

## IV.  Conclusion

The judgment denying Rule 106 relief is reversed, and the case is remanded with instructions that the district court enter an order precluding retrial on the misdemeanor charges previously brought against defendant in county court.

Judge GRAHAM and Judge GABRIEL concur.