23CA1752 Peo v Rafaela-Ramirez 11-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1752
Adams County District Court No. 21CR3805
Honorable Jeffrey Smith, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dante Alberto Rafaela-Ramirez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

---

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1   After defendant, Dante Alberto Rafaela-Ramirez, assaulted his long-time partner, M.C., the prosecution charged him with second degree kidnapping, sexual assault, unlawful sexual contact, and third degree assault.

¶ 2   At trial, M.C. testified that, on the night of the incident, she and Rafaela-Ramirez, who were in the process of ending their relationship, had an argument, and she left the house. She said that he dragged her back inside, forced her into a bedroom, and sexually assaulted her, including vaginally penetrating her. A sexual assault examination revealed bruising on M.C. but did not yield any DNA evidence linking Rafaela-Ramirez to the assault.

¶ 3   The jury acquitted Rafaela-Ramirez of sexual assault but convicted him of the remaining charges.

¶ 4   On appeal, Rafaela-Ramirez argues that the trial court erred by using the 2022 model reasonable doubt instruction, denying his motion for a mistrial after certain evidence was introduced, and issuing an inaccurate mittimus.

¶ 5   We affirm the judgment and remand for correction of the mittimus.

## I. Jury Instruction on Reasonable Doubt

¶ 6 Before 2022, the Colorado model jury instruction defined reasonable doubt as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

COLJI-Crim. E:03 (2021).

¶ 7 In 2022, the model instruction was substantially revised:

> Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the

defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).

¶ 8 The trial court denied Rafaela-Ramirez's requests that it give the 2021 instruction and instead instructed the jury on reasonable doubt using the 2022 model instruction.

¶ 9 Rafaela-Ramirez contends that the 2022 instruction impermissibly lowered the prosecution's burden of proof, undercut the presumption of innocence, and shifted the burden of proof to him. We disagree.

## A. Standard of Review

¶ 10 The trial court must properly instruct the jury on the reasonable doubt standard. *Tibbels v. People*, 2022 CO 1, ¶ 25. Whether the

3

court's instruction lowered the prosecution's burden of proof is a question of law that we review de novo. *Id.* at ¶ 22. "An instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error and requires automatic reversal." *Johnson v. People*, 2019 CO 17, ¶ 8.

## B. Analysis

¶ 11 While this appeal was pending, two divisions of this court considered similar challenges to the 2022 model reasonable doubt instruction. *See People v. Melara*, 2025 COA 48, ¶¶ 22-23; *People v. Schlehuber*, 2025 COA 50, ¶¶ 16-17. Both divisions concluded that the 2022 instruction did not lower the prosecution's burden of proof below the reasonable doubt standard. *Melara*, ¶ 24; *Schlehuber*, ¶ 20. We agree with those cases, and adopt the divisions' reasoning to resolve Rafaela-Ramirez's arguments as follows:

- The 2022 model instruction's omission of the specific language directing the jury that it may consider "the lack of evidence" does not lower the prosecution's burden of proof because the instructions as a whole inform the jury that "if the prosecution fails to present sufficient evidence of guilt, it will not have met its burden." *Schlehuber*, ¶¶ 19, 22; *see Melara*, ¶ 24.

4

- Though Colorado courts previously approved the "hesitate to act" phrase, Rafaela-Ramirez does not explain why the deletion of that phrase lowers the prosecution's burden of proof. We agree with the *Schlehuber* division that the omission of the phrase clarifies the reasonable doubt standard by discouraging courts from using analogies to explain it. *See Schlehuber*, ¶ 27.

- Defining proof beyond a reasonable doubt as proof that leaves jurors "firmly convinced" of the defendant's guilt and reasonable doubt as "a real possibility that the defendant is not guilty" does not lower the prosecution's burden of proof. COLJI-Crim. E:03 (2022). "The phrase 'firmly convinced' correctly connotes a standard of 'near certitude,'" *Schlehuber*, ¶ 31 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)), while the phrase "real possibility" correctly requires the prosecution to dispel any legitimate possibility the defendant is not guilty, "not just a serious or substantial one," *id.* at ¶ 32.

- Considering the reasonable doubt instruction as a whole, we perceive no cumulative error because there is not a reasonable

5

likelihood that the instruction would "allow a conviction based on a standard lower than beyond a reasonable doubt." *Id.* at ¶ 13 (quoting *Tibbels*, ¶ 36).

¶ 12 Accordingly, we discern no error in the court's decision to give the 2022 model instruction.

## II. Denial of the Request for a Mistrial

¶ 13 During the police investigation, M.C. showed a victim's advocate and a police officer several text messages that she had received from Rafaela-Ramirez, all of which were in Spanish. One of the text messages — as translated by the victim's advocate — said, "Thank you for everything and for real I'm sorry about last night I don't know what happened. I feel sorry." The officer included the content of the translated apology text message in a report provided to Rafaela-Ramirez.

¶ 14 On the first day of trial, defense counsel challenged the admissibility of the apology text, asserting that the text message

itself had not been turned over,[1] the translated text message as documented in the officer's report would constitute hearsay, and the message might have been mistranslated. Though the court was not convinced that, if offered through M.C., the text message was hearsay, the prosecution ultimately agreed not to introduce or elicit testimony about the apology text.

¶ 15 Nonetheless, over defense counsel's objection, the officer testified during her direct examination that while she was at M.C.'s home, Rafaela-Ramirez "had sent [M.C.] a text stating he was sorry about the prior night."

¶ 16 Immediately after this statement, the prosecutor asked to approach the bench and explained that she now recalled the prosecution's agreement not to introduce the apology text, and she suggested that the court strike the officer's reference to the text. Defense counsel, on the other hand, requested a mistrial.

---

[1] The text message had actually been produced to the defense shortly before trial. In an initial disclosure, part of the text message was cut off, but, at defense counsel's request, the prosecutor later emailed photographs of three texts, including the apology text. Defense counsel confirmed that she received the email, but she acknowledged that she failed to open the attachments containing the text messages.

¶ 17 The court did not see "what purpose a mistrial . . . would serve" because the apology text message existed, it had been disclosed to the defense, and it would be admissible at a retrial. As an alternative remedy, the court suggested that the defense could recall M.C. to question her about the text, but defense counsel rejected that proposal. She told the court that if it was "not inclined to grant a mistrial," she concurred in the prosecution's proposal to strike the offending testimony. Thereafter, the court gave the jury the following instruction: "You are instructed to disregard the witness's last answer about a text message. It cannot be considered for any purpose." At defense counsel's request, the court reiterated its admonition in the final jury instructions as follows: "If I told you not to consider a particular statement that was made during the trial, you must not consider it in your deliberations. Any statements stricken from the record cannot be considered for any purpose."

¶ 18 Rafaela-Ramirez contends that the trial court erred by denying his motion for a mistrial because the curative instruction was insufficient to remedy the prejudicial effect of the officer's testimony. We disagree.

### A.    Standard of Review and Applicable Law

¶ 19 Because the trial court is in a better position to evaluate any adverse effects of improper testimony on a jury, it has broad discretion to determine whether a mistrial is warranted. *People v. Williams*, 2012 COA 165, ¶ 13. Accordingly, we review the trial court's denial of a motion for a mistrial under a deferential abuse of discretion standard. *People v. Owens*, 2024 CO 10, ¶ 125. A court abuses its discretion only if its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Miller*, 2024 COA 66, ¶ 40.

¶ 20 "Generally, an error in the admission of evidence may be cured by withdrawing the evidence from the jury's consideration and instructing the jury to disregard it." *Vigil v. People*, 731 P.2d 713, 716 (Colo. 1987). Absent evidence to the contrary, we presume that the jury understands and will follow a trial court's curative instructions. *Owens*, ¶ 128 (citing *Bloom v. People*, 185 P.3d 797, 805 (Colo. 2008)). Thus, a mistrial, "the most drastic of remedies," should be granted only "where the prejudice to the accused is too substantial to be remedied by other means," including a curative instruction. *People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984);

9

*People v. Tillery*, 231 P.3d 36, 43 (Colo. App. 2009), *aff'd sub nom.,*
*People v. Simon*, 266 P.3d 1099 (Colo. 2011).

B.    Analysis

¶ 21 The crux of Rafaela-Ramirez's argument is that the apology text was essentially a confession to the charges, and, as such, its introduction created such extreme prejudice that the curative instruction was necessarily ineffective.  We reject that argument for several reasons.

¶ 22 First, we do not construe the text message as a confession to a crime.  Rafaela-Ramirez's statement that he was "sorry about the prior night" did not admit any fact necessary to prove any of the charges.  *See Jones v. People*, 360 P.2d 686, 690 (Colo. 1961) ("A confession is an acknowledgment in express words, by the accused in a criminal case, of the truth of the guilty fact charged or of some essential part of it." (quoting *Bruner v. People*, 156 P.2d 111, 117 (Colo. 1945))).

¶ 23 At most, the text message implied only that Rafaela-Ramirez had done *something* wrong or regrettable.  *See People v. Salas*, 2017 COA 63, ¶ 15 (mistrial was not warranted by witness's "ambiguous[]" statement that the defendant was involved in "court

10

proceedings on an alcohol problem"). But at trial, that much was not seriously disputed. Two of M.C. and Rafaela-Ramirez's teenage children testified, unchallenged, that on the night of the incident, when M.C. tried to leave the house, Rafaela-Ramirez dragged her back inside by her hair and pushed her into the bedroom, while she begged him to stop. The defense's theory was not that the children had lied or misinterpreted the situation; it was that the children's testimony was mostly irrelevant because they had not "see[n] what happened in th[e] bedroom," so they could not corroborate M.C.'s testimony about the actual contested charges — the sexual assault and unlawful sexual contact counts. On this record, we cannot say that the text message was "so prejudicial that, but for its exposure, the jury might not have found the defendant guilty" of any charge. *People v. Anderson*, 183 P.3d 649, 652 (Colo. App. 2007).

¶ 24 Second, because the text fell short of a confession to a crime, it was not so prejudicial as to overcome the presumption that the jury was able to follow the court's instruction to disregard the officer's testimony about it. *See Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1091 (Colo. 2011) ("The circumstances are . . . rare where we . . . will depart from the presumption that a jury follows a court's

11

curative instructions."); *People v. Pernell,* 2014 COA 157, ¶ 44 (concluding that the trial court did not err by denying the defendant's request for a mistrial after a witness testified that the defendant "confessed" to the crime because "a jury is presumed to have followed a curative instruction to disregard improper testimony or statements"), *aff'd on other grounds,* 2018 CO 13.

¶ 25 Third, as the trial court noted, and as Rafaela-Ramirez acknowledges on appeal, the text message would likely be admissible at a retrial.  Under these circumstances, we share the trial court's skepticism that a mistrial would serve any legitimate purpose.  *See Doumbouya v. Cnty. Ct.,* 224 P.3d 425, 430 (Colo. App. 2009) (collecting cases finding no manifest necessity for mistrial following exposure to likely admissible evidence); *State v. Seefeldt,* 2003 WI 47, ¶¶ 40-41 (court abused its discretion by granting a mistrial based on counsel's introduction of evidence in violation of a pretrial order when the evidence was otherwise "likely admissible").

¶ 26 Rafaela-Ramirez's concession about the text's admissibility also undercuts his general prejudice argument.  If the text is admissible notwithstanding its prejudicial effect, then its prejudicial effect

cannot necessitate a mistrial. Rafaela-Ramirez counters that at a retrial where the text would be admitted, counsel would at least have sufficient notice to contest its translation. But that argument is unpersuasive too because a possible mistranslation was already a basis for excluding the text message at trial. Yet, when the court offered counsel the opportunity to cross-examine M.C. about the message, counsel declined and opted for the curative instruction instead.

¶ 27 For these reasons, we conclude that the trial court properly exercised its broad discretion in denying the request for a mistrial.

## III. Correction of the Mittimus

¶ 28 The mittimus incorrectly states that Rafaela-Ramirez's convictions were the result of guilty pleas. The parties agree, and we concur, that the mittimus must be corrected to reflect that Rafaela-Ramirez was convicted on jury verdicts. *See People v. Wood*, 2019 CO 7, ¶¶ 39-40 (clerical errors in the mittimus should be corrected pursuant to Crim. P. 36 "to ensure that judgments and sentences are documented accurately"). Accordingly, we remand the case to the district court for correction of the mittimus.

## IV.    Disposition

¶ 29 The judgment is affirmed.  The case is remanded to the trial court for correction of the mittimus.

JUDGE JOHNSON and JUDGE SCHOCK concur.